Porter, J.
delivered the opinion of the court. This is an action of the first- impression hi this state, and the questions which arise out of it are of considerable importance to the parties and the public. We have given , •, i . -¶ ,. . it
The petition avers, that the plaintiff is the owner aim . possessor oí a certain lot of ground ⅛ this city ; and that he had contracted with certain persons to erect thereon a large brick house, to be completed on the 20th day of No-vein her, 182Q. That in pursuance of their contract, these persons laid the foundation, and ¿a-Proceeded to erect the building ; when they were stopped from making further progress in the work, by an injunction obtained at the suit of the defendant, by reason of which the said house was not completed until a long time after, and the plaintiff suffered damages to the amount of three thousand five hundred , ,, tlOliarS, .
It is further averred, that the said injunction was obtained maliciously,and that it was afterwards dissolved. .Judgment is prayed for the sum already mentioned.
*285 To this petition th« defendant pleaded several exceptions; the general issue; alleged title; and possession in herself; positively denied malice, and averred that the proceedings complained of were in pursuance of what she conceived her just rights.
For the better understanding of the case, it is necessary to state, that in the petition filed by the present defendant, in order to obtain the injunction, she declared, that Mitchell, who had commenced, and was about to continue, to erect a wall on her lot, was acting under the orders of Jackson, the present plaintiff, whom she stated to be then absent from the state. The injunction is asked against Mitchell alone; the damages are laid at five hundred dollars, and the bond with security, filed by her to answer for any injury the defendant Mitchell might sustain, is for that sum, and payable to him.
As soon as Jackson returned, he became a party to the suit, and contested it until final judgment.
The suit of the present defendant, as has been already intimated, complained of the damages suffered from the trespass, committed on her property; and judgment rvas asked *286 for those damages, and an injunction to pve- ./ ” J 1 vent a renewal of the trespass. The court ¿eci¿|e(j? that she recover five dollars for the injury sustained ; on the ground, that supposing the property to be in Jackson, he had illegally entered On it; but they decreed that the injunction should be dissolved.
Several objections have been made, which it is necessary to decide on, before we can reach the merits.
The first presented to us is, that the district judge did not give an opinion on certain peremptory exceptions made in defendant’s answer; and that the cause must be remanded for his decision on them. In our opinion it is unnecessary to do so. A final judgment has been given, and that is sufficient to authorise us to examine all the matters which may appear on record. If the exceptions are valid, the appellant can have the benefit of them here. If they are not, she could derive no advantage from the decision of the inferior tribunal.
These exceptions are as follows :—
1. The defendant avers, that Jackson, in January, 1820, commenced an action in the parish court, for the same cause set forth in *287 the petition filed in this case, and that he afterwards discontinued it. We see nothing in this which prevents a recovery in the present suit; to make the former action a bar, she should have shewn, that it was yet pending, or had been prosecuted to judgment.
2. It is next pleaded that certain persons, viz. J. Mitchell, A. Lemoyne and J. Lambert, have instituted two suits in the parish court, claiming damages from the defendant, by reason of the injunction obtained in the suit against Mitchell. We think the present plaintiff cannot be affected by these proceedings: his injuries are not theirs, nor have they a right to vindicate them. A judgment has not the authority of the thing judged, unless it is between the same parties: a fortiori, the pen-dency of an action between others, cannot have the effect of suspending the exercise of legal rights in a third person.
3. It is insisted, that all these suits should be cumulated before the same tribunal and tried together. To this position we cannot assent. The law has given to two tribunals jurisdiction of this action; and the citizen has a right to the choice of either. We have no authority to deprive him of this right, *288 unless it is shewn that justice cannot be done J to others without compelling him to resort to ⅞ ¿jfferent court. The passage quoted from ^¿rero has been examined. He puts a variety of cases in which actions should be cu-mulated. There is none of them that carry the doctrine so far as contended for here, except that which states, that where creditors are carrying on separate suits for distinct and independent claims against their debtor, they should all be cumulated before one judge. It is impossible we can yield assent to this doctrine, or enforce a similar practice here. For nearly eighteen years that courts have administered justice under our government, in this country, it has been the universal understanding, that the statutes creating them, gave to each citizen the right to have his claim examined, without clogging or embarrassing his suit, by forcing him to join with others; and we are of opinion, that such a practice would lead to great confusion, and in many instances work injustice. One example will suffice to prove this. If a creditor was on the eve of having his cause tried after it had been delayed for years; in case others sued his debtor, he must wait until their de *289 mands were ripe for examination, before he r _ _ _ could be permitted to have his enquired into,
j In cases or insolvency, there exists an absolute necessity that such a course should be pursued; for the moment the failure is declared, all the creditors become at once plaintiffs and defendants, as it respects each other; they must, therefore, litigate in one suit; otherwise justice could not be administered.
There is still a bill of exceptions to be disposed of. The counsel for the plaintiff, before the jury retired, drew up the form of an answer to the thirteenth question of defendant. This was objected to, and the judge permitting it, a bill of exceptions was taken. We are unable to discover that any error was committed by the judge in this opinion, or that injustice was done in consequence of the counsel handing in the form of the finding, he contended the jury should pronounce. It could have had no influence on their opinion. In our sister states, we know it is a common practice for counsel to draw up, and put in legal form, special verdicts, and justice is promoted thereby. It is not perceived, that it will have a different effect here ; nay, it is of obvious utility, where many circumstances are involved *290 in the question submitted. For i unes may ^ , J J frequently, from want of experience in thes^natters, omit something of importance, which was proved in evidence, and by this? means create a necessity for a new trial. If the defendant supposed, that the evidence would have, justified a different conclusion, #he was free to submit also a form agreeable to the views of it.
The most important question in the cause yet remains. The counsel for plaintiff states, that this action is brought on that clause in the Code found in art. 316, 320, which provides, that whoever injures another, through his fault, is bound to repair it. We agree with the advocate of the appellant, that this word ^aült must be taken in its legal sense. Many injuries may be suffered, which, considered in a moral point of view, «veil justify that imputation on the person who inflicts, them, and for ^Ivhicfc, no legal remedy exists. ' We must, therefore, recur to other provisions of the law, to ascertain whether the act complained of here, is that kind of fault for which an action can be maintained.
If the proceedings of the defendant, that are alleged to constitute the injury for *291 which redress is demanded here, had been ,. , , , T • those which belong to an ordinary suit at law, it would perhaps be found, if it was necessary to decide the question, that a failure to succeed, in an action of that kind, does not authorize a demand in damages. Courts of justice are open to every one, and it is of the first importance that the citizen who feels himself aggrieved, or who imagines that he is aggrieved, should find his way into them without difficulty. The law inflicts its punishment, if he makes a false claim, by mulcting him in the costs, and that is perhaps enough, without subjecting him to an investigation of his motives in another suit, where they may be mistaken, and must, from the nature of things, be always imperfectly understood. It is far better that twenty persons be troubled by vexatious suits, than that one oppressed or injured man should be deterred by the fear of future consequences, from making his wrongs known to the justice of his country, and having them redressed.
But the same regard for private right which makes it so important to preserve this privilege to the citizen, is opposed to the exercise of those summary remedies, which our law' *292 from necessity has given in some instances. . ° They are in a great measure contrary to the spirit of our constitution, and can only' be reconciled with it by the reflection, that the improper use of them is checked, by provision having been made, that if resorted to, in any other cases but those contemplated by law, redress is secured to the sufferer. In regard to the writ, which was the means of inflicting the injury complained of here, the legislature have clearly and distinctly marked their jealousy of it. Acts of 1817, p. 28, sec. 5.
As this case is governed by the statute just referred to, it is necessary to quote so much of it, as will enable the opinion of the court to be clearly understood. It declares—
“That no injunction shall be granted to deprive any person from the free disposal or use of his property in his actual possession, or to stay execution, &c. &c. unless the party who sues for it, gives security as in case of attachment, conditioned for the payment of all costs and damages to the defendant, in case such injunction should prove wrongfully obtained.”
From this provision we conclude, that if the writ of injunction is wrongfully sued out, the party applying for it is responsible for all *293 the damages that ensue. The bond is requir- ° ... ed, as a means of securing this object.
In deciding the case now before us, we may be aided in the investigation, by supposing that the present suit was on a bond taken under the act cited. In such a case, we think the only proof necessary to enable the plaintiff to recover, would be the execution of the bond, and the dissolution of the injunction; for whe* ther the writ is taken out in a case not contemplated by law, or procured by a false representation of facts, it is in the language of the statute, wrongfully obtained. Nor is there any thing harsh in this construction; when a just cause of action exists, the person who has a right to it, should sue in the ordinary way, and, if his claim be doubtful, he ought to wait for judgment, before he deprives a citizen of his property. If, however, he chooses to pursue a more energetic, but less cautious* mode of proceeding; if in his anxiety to do justice to himself, he does inji^ice to others, and> abuses a privilege, given for his protection; itife-right, as it is the law, that he should answer for the consequences.
No bond, however, was given to the plain-» tiff; and it. is contended, that the defendant *294 is only liable to an obligation taken in pursuance of the statute. We are of opinion, that this circumstance cannot affect the rights 0f the parties. The bond is required to secure to the law its effect; to prevent it being evaded. The giving or not giving security, cannot change or weaken the responsibility incurred by taking out the writ. Besides, if bond was not given, who is to suffer by the neglect? It would be most emphatically permitting the defendant to take advantage of her own wrong, if we allowed her to offer the violation of a law, as the means of avoiding an obligation, which would have been created by an observance of it.
In this case, the jury have found that the writ of injunction was sued out maliciously. This more than brings the defendant within the statute; and the judgment given on the verdict must be affirmed, unless the other means of defence w hich she has set up are tenable. ||
It is first alleged, that the suit commenced was against one Mitchell, not against the present plaintiff. But the petition states, that the building of which she complained, was about to be put up by the directions of Jack *295 son, and that Mitchell was the undertaker. * j • • i . . ,, , . And it is the opinion ot the court, that' the defendant cannot be excused to the owner, because she thought fit to select another person for defendant.
It is next contended, that in giving bond to Mitchell, the requisitions of the law were complied with, and that no greater responsibility was incurred than for the sum therein expressed. In this position we cannot concur. We have already observed, that the bond was required as an additional security. Were we to agree in the construction which the appellant gives to the statute, it would have often a contrary effect. F or, if the damages amounted to more, as in the case before us, than the, penal sum expressed in the obligation, the plaintiff, who sued out the writ, would not be responsible for all damages, he would be liable but for a part, and a small part of them.
Should we even admit the appellant to be correct in this position, she does not bring herself within the act. It requires bond, as as in case of attachment; that is, double the amount sworn to. In the petition filed, the damages are stated to amount to $500: she swears, that she has been injured to that. *296 amount, and only gives an obligation in that sum.
It is still urged, that the plaintiffhas not prove(j Gf possession or property as stated in the petition. This, however, is neither a petitory nor possessory action. It is one for wrongfully suing out a writ of injunction, and thus depriving the plaintiff of the enjoyment and use of his property. The court has already decided^ that the injunction should be dissolved ; every question therefore connected with the right of possession or right to the soil, so far as they were involved in the decision of that suit, or necessary to be established in this, are now res judicata between the parties, arid cannot be again enquired into. Admitting the plaintiff had merely proved that the defendant prevented him from erecting a common wall; the injunction was wrongfully sued out, and a right of action accrued. It was correctly observed from the bar, that it might be important for the defendant to shew a right to the soil, in order to rebut the malice imputed to her, but that the plaintiff’s title could not be disputed.
This «pinion renders it unnecessary to examine several bills of exceptions taken to the evidence of title, introduced by the plaintiff
Livermore for plaintiff, Hennen for defendant.
It has not escaped our attention, that as the plaintiff alleged a right of property in his petition, it might be urged that he should be held to prove, what he has thought material to aver. We have already said, in the case of Canfield vs. M'Laughlin, 9 Martin, 303, and in that of Bryan & wife vs. heirs of Moore, decided a few days since, that if the evidence substantially established the right of the plaintiff to recover, the court would give judgment in his favour, although the proof did not correspond with the allegations in the petition. Here the only objection is, that more was averred than was necessary.
We see nothing erroneous in the charge of the judge to the jury.
It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed with costs.